United States District Court
Southern District of Texas
**ENTERED**
January 22, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:20-CV-39** |
| | § | |
| **3.572 ACRES OF LAND, MORE OR** | § | |
| **LESS, SITUATED IN WEBB COUNTY,** | § | |
| **STATE OF TEXAS; AND** | § | |
| **GUILLERMO CALDERA,** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Opposed Motion of the United States of America for Order of Immediate Possession. (Dkt. No. 7). Defendants have filed a response, (Dkt. No. 14), and Plaintiff has filed a reply, (Dkt. No. 23). The parties also filed supplemental briefing, (Dkt. Nos. 24 and 25), as requested by the Court after the conclusion of the hearing on the motion, (Min. Entry dated July 27, 2020).

## I. Background

Plaintiff United States of America ("United States" or "Government") filed a complaint in condemnation against Defendant Guillermo Caldera and his property under 8 U.S.C. § 1103(b)(2) and 40 U.S.C. §§ 3113 and 3114. (Dkt. No. 1-1 at 2). The complaint seeks a twelve-month temporary easement on Caldera's property to conduct surveying, testing, and other investigatory work "needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border [. . .]." (*Id.* at 4). This easement would include the right to make borings and to trim or remove any vegetative or structural obstacles that interfere with this work. (*Id.* at 10).

Defendant Guillermo Caldera ("Caldera") owns a fee simple interest in the subject property. (Dkt. No. 13 at 2). Caldera opposes the United States' motion for immediate

possession, and in his response he raises three arguments against the motion. (Dkt. No. 14). First, Caldera asserts that the Government violated its statutory obligation to offer a bona fide estimate of just compensation. (Dkt. No. 14 at 3–5). Second, Caldera asserts that the United States failed to comply with 8 U.S.C. § 1103(b)(3), which requires that the United States privately negotiate a resolution with landowners before filing a condemnation suit in court. (Dkt. No. 14 at 6–7). Finally, Caldera argues that the Government is statutorily required to appraise the property at issue in order to develop a bona fide estimate of just compensation. (Dkt. No. 14 at 7–9).

## II. Analysis

Under the Fifth Amendment's Takings Clause, private property may not be taken for a public purpose without "just compensation." U.S. Const. amend. V. Just compensation generally means the fair market value of the property when acquired. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") gives the Attorney General of the United States the authority to bring condemnation actions for land and interests "essential to control and guard the boundaries and borders of the United States." 8 U.S.C. § 1103(b)(1), (3).

Caldera does not challenge the right of the United States to take an interest in his land for the purpose of securing the United States' border. Nor does he challenge the legality of the funding sources used by the United States for the acquisition of his property or the work the United States seeks to perform on the property. Instead, he objects only to the way in which the United States has chosen to exercise its right to take the interest.[1] Similarly, the United States does not challenge Caldera's right or

---

[1] Caldera has emphasized to the Court that the United States has already awarded contracts for construction of border wall in the Laredo Sector. (Dkt. No. 16). Caldera contends that this action belies the United States' asserted position that the purpose of obtaining the temporary right of way is to evaluate whether the subject property is appropriate or adequate for construction of the wall across the property before the Government can decide whether to proceed with construction. Caldera asserts that this inconsistent position is more evidence of the United States' lack of good faith in negotiating for acquisition of the property. Regardless, Caldera acknowledges that he lacks standing to challenge the award of the contracts in this lawsuit, and he does not assert that the Government's awarding of the construction contracts constitutes a substantive defense in this lawsuit.

standing to assert the objections he raises to the entry of an order of immediate possession.

The Declaration of Taking Act ("DTA") was enacted in 1931[2] and created a procedure to expedite the taking of title and possession of lands so that the United States could begin construction work before final judgment. *See* H.R. Rep. No. 71-2086 (1930) (statement of Rep. Graham of the House Committee on the Judiciary). The DTA provides:

> In any proceeding in any court of the United States outside the District of Columbia brought by and in the name of the United States and under the authority of the Federal Government to acquire land, or an easement or right of way in land, for the public use, the petitioner may file, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the land described in the petition, declaring that the land is taken for the use of the Government.

40 U.S.C. § 3114(a). Among other required information, a declaration of taking must include "a statement of the amount of money estimated by the acquiring authority to be just compensation for the land taken." 40 U.S.C. § 3114(a)(5).

Section 3114(b) further provides:

> (b) **Vesting of Title.**—On filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration—
>
> > (1) title to the estate or interest specified in the declaration vests in the Government;
> >
> > (2) the land is condemned and taken for the use of the Government; and
> >
> > (3) the right to just compensation for the land vests in the persons entitled to the compensation.

40 U.S.C. § 3114(b).

The Fifth Circuit has confirmed that the filing of a declaration of taking and the deposit of estimated compensation pursuant to § 3114(b) vests title in the United States and accomplishes the taking. *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303

---

[2] The Declaration of Taking Act was originally codified as 40 U.S.C. § 258a and is presently codified as 40 U.S.C. § 3114.

(5th Cir. 1981). In the Fifth Circuit's words, "The district court, powerless to dismiss the proceedings, performs an almost ministerial function in decreeing the transfer of title." *Id.*

### A.  Statutory Appraisal Requirement

The Court will first address Caldera's argument that 42 U.S.C. §§ 4651(2) and 4651(3) mandate the Government to appraise real property subject to condemnation. These sections of § 4651 provide:

> (2) Real property shall be appraised before the initiation of negotiations . . .

> (3) Before the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. . . The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. Where appropriate the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

Caldera asserts that these statutes require the Government to obtain an appraisal of the property subject to a taking and to negotiate for the purchase of the property rights it seeks based on its appraisal. (Dkt. No. 14 at 8). Caldera asks the Court to order the Government to appraise his property and negotiate based on the appraisal in compliance with §§ 4651(2) and 4651(3).

The Government responds that §§ 4651(2) and 4651(3) are policy guidelines and are therefore not mandatory. (Dkt. No. 24 at 5). The Government notes that § 4651 begins with a caveat stating that "heads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies." The Government adds that a second statute, 42 U.S.C. § 4602, expressly states that "[t]he provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purpose or condemnation."  Indeed, the Fifth Circuit has already agreed,

stating that "the provisions of § 4651 are hortatory guidelines and not enforceable mandatory requirements." *United States v. 320.0 Acres of Land*, 605 F.2d 762, 822 n.134 (5th Cir. 1979).

Caldera does not present the Court with any legal authority to support his contention that the pronouncements of § 4651 are binding on the United States in these condemnation proceedings. Instead, Caldera urges that the Court, as a matter of policy, require the Government to comply with § 4651 by conducting an appraisal and basing its negotiations on the appraised amount. Yet, doing so would require the Court to ignore the language of 42 U.S.C. § 4602 and the Fifth Circuit's previous guidance on this issue.

The Court feels constrained to agree with the Government's position. Although the statutory text and existing case law indicate that §§ 4651(2) and 4651(3) represent Congress's preferred course of action as a matter of policy, they do not compel the Government to appraise the property at issue in order to determine an estimate of just compensation. The Court **OVERRULES** this objection.

### B. The United States' Estimate of Just Compensation

Caldera argues that the United States is not entitled to immediate possession because it has not estimated and deposited just compensation for the property to be taken in compliance with 40 U.S.C. § 3114(b).

As a preliminary matter, the parties dispute the standard of review applicable to the analysis of this issue. It has been noted that there are two competing standards relating to a court's review of whether the United States has followed the requisite statutory procedures in a condemnation action. *United States v. 1.04 Acres of Land*, 538 F.Supp.2d 995, 1000 (S.D. Tex. 2008).

During the period of time when federal condemnation actions were based on various state-law procedures, several federal courts required strict compliance with those state procedures. *Id.* (citing *United States v. 2.4 Acres of Land*, 138 F.2d 295, 298 (7th Cir. 1943)). The instant proceeding, of course, is governed by federal law, and so it is doubtful that this older standard is applicable to this condemnation proceeding.

The more recent trend has been to interpret condemnation provisions liberally to

effectuate the purpose of the acquisition. The Ninth Circuit Court of Appeals held that eminent domain statutes are to be construed in view of the statute's purpose. *1.04 Acres of Land* 538 F.Supp.2d at 1000 (citing *United States v. Kennedy*, 278 F.2d 121, 126 n.17 (9th Cir. 1960)). "The rule that grants of the power of eminent domain are to be strictly interpreted against the government and in favor of the property owner generally has not been applied to federal statutes authorizing executive officers . . . to condemn property. Emphasis has been focused upon the purposes to be accomplished, and such legislation has been treated extremely liberally to effectuate the federal projects." 3 Sutherland Statutory Construction § 64.06 (6th ed. 2007); *United States v. 1.33 Acres*, 9 F.3d 70, 72 (9th Cir. 1993); *Kennedy*, 278 F.2d at 126 n.17.

Thus, it appears that the Court should liberally interpret the condemnation provisions of § 3114(b). Regardless, the standard of review is not determinative on this issue because of the information contained in the record.

Although Caldera asserts that the United States has not estimated and deposited just compensation, he does not dispute that the United States has actually deposited $100 with the Court as the amount it has estimated to be just compensation. (Dkt. No. 2-1 at 12; Dkt. No. 5). Caldera's argument is premised on the fact that the United States has determined that the temporary right of way it seeks in this lawsuit has "no measurable market value." (Dkt. No. 24 at 3). The $100 which the United States has deposited into the registry of the court as the estimated just compensation is an amount that has been "administratively" determined to represent "the nominal value of the acquired estate." (Dkt. No. 24 at 3). The Government offers the same $100 as estimated just compensation in every opposed lawsuit seeking a right of entry, regardless of the acreage of the property involved in the lawsuit. (Dkt. No. 14 at 13).

The parties agree that one of the purposes of the DTA is to provide the property owner with "immediate cash compensation to the extent of the Government's estimate of the value of the property." *United States v. Miller*, 313 U.S. 369, 381 (1943). Caldera argues that the $100 deposited by the Government represents "no compensation" instead of just compensation, asserting that it is an "arbitrary amount set as $100 without any

regard as to whether it provides fair and adequate compensation as required by the DTA." (Dkt. No. 14 at 4).

Caldera concedes that the amount of compensation that the Government offers a landowner is normally immaterial under § 3114(a), but he asserts that the amount offered becomes material when it bears on the question of whether the Government acted in good faith. (Dkt. No. 14 at 5). However, the cases Caldera that cites do not support the argument that the Government must make its estimate of just compensation under the DTA in good faith. In *United States v. 1.04 Acres of Land*, the issue addressed by the district court was whether the Government is required to make a bona fide effort to conduct pre-suit negotiations under 8 U.S.C. § 1103(b)(3). *Id.* at 1010–1012. Likewise, in *Transcont'l Gas Pipe Line Corp. v. 118 Acres of Land*, the district court also addressed the question of whether the condemnor in that case complied with the requirement to conduct good faith negotiations prior to filing suit. 745 F. Supp. 366, 369 (E.D. La. 1990). Contrary to Caldera's assertion, these cases do not speak to the Government's good faith determination of just compensation; they speak instead to the separate issue of good faith negotiations before filing a condemnation suit.

Although Caldera characterizes the Government's determination of estimated just compensation as "arbitrary," the United States has in fact presented proof in support of its determination that the requested right of entry has no value. The United States presented the declaration of Roger C. Jennings, a professionally licensed real estate appraiser who has been employed by the United States Army Corps of Engineers (USACE) as a real estate appraiser since March 2012. (Dkt. No. 24-1 at 1). Mr. Jennings' declaration provides his opinion, together with a supporting basis and explanation, that there is no measurable market value attributed to a right of entry. (*Id.* at 1–3).

Caldera disputes Mr. Jennings' opinions and methodology. Caldera points to his expert certified appraiser Chance Bolton, who opines that the right of entry sought by the United States does have market value, although he does not state what he believes that market value to be. (Dkt. No. 14 at 14, 15). Caldera also points to two recent cases in which other district courts in the Southern District of Texas have awarded an amount

of just compensation in excess of $100. *See United States v. 30.00 Acres of Land and Aleida Flores*, 2020 WL 4188610, at *7 (S.D. Tex. July 21, 2020) (finding the amount of just compensation to be $250); *United States v. 30.00 Acres of Land and Velma Flores*, 2020 WL 1854189, at *5 (S.D. Tex. Apr. 13, 2020) (finding the amount of just compensation to be $500).

Yet, Caldera's ability to point to two cases in which the court awarded marginally more than the $100 as just compensation does not establish that the United States' position about the value of the right of entry is arbitrary. The United States can easily counter with multiple other cases in which the court has agreed with the Government's position on just compensation and awarded the $100 previously deposited by the Government. *See, e.g., United States v. 30.00 Acres of Land and Veronica Mendoza*, Case No. 7:19-cv-234 (Dkt. No. 30); *United States v. 117.543 Acres of Land*, 2020 WL 7055690, at *6 (S.D. Tex. Dec. 2, 2020); *United States v. 8.903 Acres of Land*, 2020 WL 4350724, at *5 (S. D. Tex. July 29, 2020). And a disagreement between the two sides' expert real estate appraisers merely establishes that a genuine dispute exists between the parties as to whether the right of entry has market value.

Although it is questionable whether the United States has the burden of presenting proof to the contrary, the Government has countered Caldera's argument by presenting proof of some basis for its position that the temporary right of entry it seeks has no measurable market value. Much of Caldera's argument as to whether the Government's "no value" determination is arbitrary crosses the line into an argument about which sides' calculation of just compensation is correct—an issue the Court cannot consider at this stage of the litigation.

Section 3114(a) requires the United States' to provide "a statement of the amount of money estimated to be just compensation for the land taken"—in this case, a temporary right of entry. 40 U.S.C. § 3114(a). Section 3114(b) requires the United States to deposit that amount of estimated just compensation in the registry of the court. 40 U.S.C. § 3114(b). Nowhere in the statute does it state that the estimated just compensation must be "bona fide" or "authentic" or "legitimate." The statute likewise does not require that

the acquiring authority's estimate of just compensation be based on an appraisal report.

The Fifth Circuit has previously addressed a similar challenge to a declaration of taking based on the language of the DTA. *In re United States*, 257 F.2d 844 (5th Cir. 1958). In that case, the landowner argued that, when the DTA requires an acquiring authority to provide a statement of estimated just compensation, the DTA "means a good faith, fair, and honest estimate." *Id.* at 847. The Court concluded that:

> The bad faith exception to the rule of finality of the administrative estimate of just compensation does not exist. Courts have no jurisdiction to review the amount of estimated compensation: none to set aside or vacate a declaration of taking, none to refuse a declaration of possession on the grounds asserted here. If the law were otherwise, a district judge under the guise of determining whether the declaration of taking was in good faith and the amount tendered sufficient to escape the charge that it was arbitrary or fraudulent, could superintend the whole act of taking, vesting title, and acquiring possession, and thereby prevent its accomplishment unless the amount estimated measured up to his idea of what that amount should be.

*Id.* at 848. Accordingly, it may be inappropriate for this Court to even consider whether the United States acted in good faith when it determined the amount of estimated just compensation. Regardless, and assuming *arguendo* that the United States has the burden to prove that it has complied with the requirements of § 3114(a) and (b), the Court finds that the United States has met that burden, and this objection is **OVERRULED**.

### C. Good Faith Negotiation

Caldera next argues that the Government has failed to comply with its obligation to engage in good faith pre-suit negotiations to acquire the property pursuant to 8 U.S.C. § 1103(b)(2)–(3). Section 1103 provides that the Government may only file a condemnation suit once it is "unable to agree upon a reasonable price" with the property owner. Caldera's argument raises two separate questions. The first question is whether 8 U.S.C. § 1103(b) requires that the Government negotiate in good faith with the landowner before filing a condemnation suit. If § 1103(b) does create a duty to negotiate, the second question is whether the Government complied with its obligation.

### 1. Whether § 1103(b) creates a duty to negotiate.

An attempt to reach an agreement with the owner for the purchase of property is not a condition precedent to condemnation proceedings unless a statutory provision requires such an attempt. *1.04 Acres of Land*, 5378 F. Supp. at 1008–1009 (citations omitted). The statutory condition must be enacted by Congress in the statute that authorizes an official to proceed with a condemnation action. *United States v. Meyer*, 113 F.2d 387, 394 (7th Cir. 1940) (citing *In re Condemnations for Improvement of Rouge River* (*Rouge River*), 266 F. 105, 119 (E.D. Mich. 1920)). A negotiation requirement must be shown to have been expressly imposed by Congress on the United States' right to exercise its power of eminent domain. *Rouge River*, 266 F. at 119.

Two different portions of Section 1103(b), the statute at issue in this case, explicitly reference negotiations between property owners and the government. Section 1103(b)(2) states: "[t]he Attorney General may contract for or buy any interest in land . . . as soon as the lawful owner of that interest fixes a price for it and the Attorney General considers that price to be reasonable." 8 U.S.C. § 1103(b)(2). Additionally, if the "Attorney General and the lawful owner of an interest . . . are unable to agree upon a reasonable price, the Attorney General may commence condemnation proceedings . . . ." 8 U.S.C. § 1103(b)(3). "The language of 8 U.S.C. § 1103(b)(3) clearly contemplates that some attempt has been made to reach an agreement prior to the Attorney General exercising the authority to pursue eminent domain remedies." *1.04 Acres*, 538 F.Supp.2d at 1009–10. The Court agrees that "Congress clearly intended there to be some level of negotiation between the Government and the owner of a property interest prior to the institution of eminent domain procedures pursuant to 8 U.S.C. § 1103(b)(3)." *Id.* at 1010.

### 2. Whether the United States met its obligation to negotiate.

Having decided that § 1103(b) compels the United States to negotiate with a landowner before instituting a condemnation, the Court now considers whether the record establishes that the United States has satisfied its obligation to conduct negotiations in compliance with § 1103(b)(3). "Where a statute requires an attempt to purchase prior to condemnation, it is not necessary that there be an 'absolute inability'

to acquire the property, but only that there be a bona fide effort on the part of the condemning party." *1.04 Acres*, 538 F.Supp.2d at 1010 (citing *United States v. Certain Interests in Prop. in Cascade Cty., Mont. (County of Cascade)*, 163 F. Supp. 518, 524 (D. Mont. 1958)). Caldera asserts that the Government violated its duty to engage in pre-suit negotiations when it filed its condemnation suit without previously making a private offer of compensation to Caldera in exchange for a temporary easement over the property. (Dkt. No. 14 at 6–7). The Court agrees with Caldera because the record reflects that the Government never made any offer of compensation to Caldera for the purchase of his property before filing suit.

Although it is undisputed that the Government engaged in pre-suit discussions about the Government's intent to acquire a right of entry to Caldera's property and the condemnation process and procedures, the Government incorrectly equates these discussions with *negotiations*. Before filing suit, the Government never made an offer of compensation to Caldera; exactly as Caldera alleges. As evidence of its pre-suit negotiations, the Government points to a description of its efforts to resolve the lawsuit, which it provided in the Joint Report Required by Fed. R. Civ. P. 26(f) and Joint Discovery/Case Management Plan. (Dkt. No. 18 at 5–6). Nowhere in this description is there any reference to a representative of the United States actually making an offer of compensation to Caldera. (*Id.*).

In fact, the Government's description of the discussions with Caldera concludes with the representation that the Assistant U.S. Attorney "again advised defense counsel that the United States will not provide compensation for a signed right of entry." (*Id.* at 6–7). This statement is consistent with later email communications with Caldera's attorney—occurring after suit was filed—in which the United States again reiterated its position, as follows:

> As we have discussed before, we cannot negotiate the price of an unopposed [right of entry]. If the [right of entry] is signed willingly, no just compensation is given. If it is opposed and we must proceed with litigation, the land owner will get no more than $100.00 (I am only speaking of the [right of entry] specifically).

(Dkt. No. 14 at 12). This was followed in another email with the statement,

> There is no compensation given for [rights of entry] unless of course they are opposed and in which case we put $100 in the court registry.

(*Id.* at 13). In summary, before filing suit the Government tells property owners that if they agree to the right of entry, the Government will pay them nothing; but, in the event that a property owner opposes the right of entry, the Government will deposit $100 in the registry of the court.

Obviously, the nature of the Government's discussions with Caldera and other landowners about acquiring a right of entry appears to be driven by its position that the right of entry has no measurable property value. Yet the Government has decided to administratively place a nominal value of $100 on the right of entry. It is confounding to the Court that the Government—prior to filing suit—did not simply offer the $100, or any other lesser amount of compensation, to Caldera in exchange for acquiring a right of entry to his property. Telling the property owner something to the effect of "We won't pay anything to you now, but if you oppose the right of entry we'll file a lawsuit and deposit $100 with the court" does not constitute bona fide negotiations to purchase the right of entry without filing a lawsuit. To the contrary, it is telling the property owner that they will be paid nothing for the right of entry *unless* a lawsuit is filed. This is not a bona fide effort by the Government to purchase the right of entry and to avoid exercising its powers of eminent domain by filing a lawsuit.

Although the Court has found that the United States failed to engage in bona fide negotiations prior to filing suit, that finding does not necessarily defeat the United States' right to possession of the right of entry. "The Government may properly file a condemnation action before compliance with the negotiation provisions of 8 U.S.C. § 1103(b), but may not receive possession prior to compliance." *Tamez v. Chertoff*, 2009 WL 10693618, at *5 (S.D. Tex. Jan. 27, 2009). A lack of bona fide negotiations may prevent the Government from receiving possession of the condemned land. *United States v. 23.311 Acres of Land*, 2020 WL 4724332, at *3 (S.D. Tex. Mar. 4, 2020). "Nevertheless, a

court may direct further negotiations as a condition precedent to condemnation if it finds the negotiations have, so far, been inadequate." *1.04 Acres of Land*, 538 F. Supp. 2d at 1011 (citing *County of Cascade*, 163 F. Supp. at, 525).

Regarding the adequacy of negotiations, "It is sufficient that negotiations proceed far enough to indicate that an agreement is impossible, and, where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary." *1.04 Acres of Land*, 538 F. Supp.2d at 1010 (collecting cases). After an unsuccessful attempt has been made, a second effort is unnecessary. *Id*. The negotiation condition may also be satisfied where the owner is willing to sell only at a price which the condemning party deems excessive. *Kerr v. Raney*, 305 F. Supp. 1152, 1156 (W. D. Ark. 1969). If it becomes apparent that no agreement can be made at a price that is satisfactory to the condemning party, the condemnor need not make any further effort to reach an agreement. *Id*.

The Court has already, in fact, ordered the parties to negotiate further about just compensation. (Min. Entry dated June 8, 2020). Caldera acknowledges that, in accordance with the Court's directive, the parties further negotiated, culminating in Caldera making an offer of $2,230 and the Government stating that it would not agree to any amount above $100. (Dkt. No. 14 at 3).

Based on the prior discussions between the parties, the Court might otherwise determine that the parties have reached an impasse and that they may perhaps be unable to reach an agreement at a price satisfactory to the United States for the purchase of the right of entry it seeks in this case. But the Court is not yet ready to reach that conclusion because the President of the United States has very recently indicated a shift in policy toward the construction of the border wall. *See* Proclamation on the Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction (Jan. 29, 2021) (Federal Register publication forthcoming). The Court is concerned that the Administration's shift in policy may likewise signal a shift in the Government's posture toward negotiations for acquiring a right of entry from Caldera and other property owners.

As a result of the foregoing, the Court **ORDERS** the United States to file a supplement to its motion for order of immediate possession (Dkt. No. 7) by **February 3, 2021** to provide: (1) a statement of whether the United States intends to pursue this lawsuit in general and the motion for order of immediate possession in particular; and (2) further proof of either additional negotiations with Caldera as to the acquisition of the right of entry or a statement that the United States' negotiation position has not changed and the parties remain unable to reach an agreement at a price satisfactory to the United States for the purchase of the right of entry it seeks in this case. The Court expects that the information provided in the United States' supplement will reflect communications with the appropriate agency representatives. The Court anticipates entering a final order on the motion for order of immediate possession after it receives the United States' supplement.

It is so **ORDERED**.

**SIGNED** on January 22, 2021.

John A. Kazen
United States Magistrate Judge